# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1516

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Plaintiff-Appellee,　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of South Dakota.
Karsten Buffalo,　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Defendant-Appellant.　*
　　　　　　　　　　　　　　　　　*

_____

Submitted:  October 21, 2003

Filed:  February 10, 2004

_____

Before BYE, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Karsten Buffalo appeals his jury conviction of one count of assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3) and one count of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(a)(6).  Buffalo claims, among other points of contention, that the district court erred by refusing to allow testimony that someone else confessed to the crime and that the district court should have allowed him to question the victim about prior fights. For the reasons stated below, we affirm in part, reverse in part, and remand for a new trial.

## I. FACTUAL BACKGROUND

On the night of November 2, 2001, Jules Uses Many shot the defendant, Karsten Buffalo, with a BB gun after an argument. The following night, when Uses Many was walking home alone from a bar on the Cherry Creek Indian Reservation, he was assaulted with a baseball bat by four or five people and suffered serious injuries. He identified Buffalo as his assailant, and the government charged Buffalo with the assault, proceeding to trial on the theory that the attack was motivated by Buffalo's desire to exact revenge on Uses Many for the previous night's BB gun shooting.

Buffalo, however, denied any involvement in the attack and, at trial, attempted to prove an alibi defense. To bolster this defense, he sought to show that someone else was responsible for the beating–namely, Rodney "Rocky" Hayes. Like Buffalo, Hayes had been involved in past altercations with Uses Many. According to Buffalo, while he was detained awaiting trial on the charges in this case, two of his cell mates (Chastyn Waloke and Justin Romero) independently told him that Hayes had confessed to them that he attacked Uses Many on the night in question. Buffalo sought to introduce this testimony, but the government objected to its admission on the ground that it was inadmissible hearsay. Moreover, because several people were involved in the assault on Uses Many, the government took the position that, even if Hayes had confessed, his participation in the assault did nothing to exonerate Buffalo.

Buffalo urged the district court to admit Waloke's and Romero's testimony regarding Hayes's alleged confession on the theory that the confession constituted a statement against Hayes's penal interest pursuant to Federal Rule of Evidence 804(b)(3). This exception to the hearsay rule requires the unavailability of the out-of-court declarant; here, Hayes. At the time the defendant made his offer of proof regarding Waloke's and Romero's testimony, Hayes had not been successfully

-2-

subpoenaed and was not expected to testify. The court held a hearing outside the presence of the jury on the issue of the admissibility of Waloke's and Romero's testimony. At this hearing, the main dispute between the parties was whether Hayes was "unavailable" within the meaning of Rule 804. At the close of the hearing, the court reserved ruling and urged the parties to attempt to locate Hayes.

By the following morning, Hayes had been located, and Buffalo called him to testify in spite of the court's peremptory ruling that, if Buffalo called Hayes, he would not be permitted to call Waloke and Romero as impeachment witnesses. In the court's view, Buffalo would only have been permitted to call Waloke and Romero to testify about Hayes's alleged confession if the government, and not Buffalo, had called Hayes. The court commented that permitting Buffalo to call Hayes only to impeach him with Waloke's and Romero's testimony would be nothing more than an attempt to set up a strawman to circumvent the rule against hearsay under the guise of impeachment.

On the stand, Hayes admitted that he told Waloke and Romero that he wished he had been the one to assault Uses Many, but he denied having said that he had anything to do with the assault. Uses Many also took the stand and testified that he was certain Buffalo attacked him, despite defense counsel's attempt to highlight the physical similarities between Buffalo and Hayes. Neither Waloke nor Romero testified, and the jury returned a verdict of guilty on two counts.[1] The district court sentenced him to two concurrent terms of seventy months imprisonment. This appeal followed.

---

[1]The jury convicted Buffalo of assault with a dangerous weapon (baseball bat) and assault with intent to cause serious bodily injury. Buffalo was acquitted of the assault with a dangerous weapon charge that alleged the use of shod feet.

## II. DISCUSSION

### A. Standard of Review

We review challenges to a district court's evidentiary rulings for abuse of discretion. See United States v. Oseby, 148 F.3d 1016, 1025 (8th Cir. 1998). Moreover, the district court's evidentiary rulings are subject to harmless error analysis under Federal Rule of Criminal Procedure 52(a). United States v. Blake, 107 F.3d 651, 653 (8th Cir. 1997).

### B. Admissibility of Hayes's Confession for Impeachment Purposes

If offered merely "to prove the truth of the matter asserted," Fed. R. Evid. 801(c), Waloke's and Romero's testimony that Hayes confessed to them would have constituted excludable hearsay under the Federal Rules of Evidence. The district court's exclusion of the testimony, therefore, was correct insofar as the court ruled that Buffalo could not introduce Waloke's and Romero's testimony to prove that Hayes indeed confessed. However, testimony oftentimes serves more than one purpose, and while it may be inadmissible for one purpose, it may be admissible for another. Such is the case here. The testimony that Hayes confessed should have been admitted to impeach Hayes's testimony as a prior inconsistent statement under Federal Rule of Evidence 613(b).

The trial court ruled that it would not permit Buffalo to call Hayes and then to impeach him with Waloke's and Romero's testimony about the confession because to do so would simply be a pretext to get before the jury otherwise inadmissible hearsay testimony. The trial court's ruling appears, in part, to have arisen out of the traditional rule against impeaching one's own witness. This rule, however, was abandoned with the adoption of Federal Rule of Evidence 607, which provides: "The credibility of a witness may be attacked by any party, including the party calling the witness." Fed. R. Evid. 607.

This case requires us to consider the interplay between the ability of parties to impeach their own witnesses, embodied in Rule 607, and Rule 613(b), which allows the admission of prior inconsistent statements of a witness under limited circumstances. Specifically, Rule 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Fed. R. Evid. 613(b).

1.      The Danger of Admitting Prior Inconsistent Statements

When a party is allowed to impeach its own witness with a prior inconsistent statement, the underlying problems associated with the introduction of out-of-court statements surface. This is so because "the power to impeach one's own witness can be abused." See 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6093 (1990). Calling a witness only to impeach him or her with a prior inconsistent statement can have the effect of undermining the rule against hearsay. Id.

Many courts, including our own, have recognized this potential for abuse in impeaching one's own witness with prior inconsistent statements. See United States v. Fay, 668 F.2d 375, 379 (8th Cir. 1981) (holding trial court did not abuse discretion in excluding testimony where defendant sought to call witness knowing she would deny hearsay within hearsay statement and intending to call another witness to impeach that testimony where exception to hearsay rule did not excuse second layer of hearsay). The danger, which the district court recognized in Buffalo's case, is that a party will call a witness, knowing him or her to be adverse, merely to make an end-run around the rule against hearsay by impeaching the witness with a prior

inconsistent statement that the jury would not otherwise have been allowed to hear. See, e.g., United States v. Peterman, 841 F.2d 1474, 1479 (10th Cir. 1988); United States v. Frappier, 807 F.2d 257, 259 (1st Cir. 1986); United States v. Johnson, 802 F.2d 1459, 1466 (D.C. Cir. 1986); United States v. Sebetich, 776 F.2d 412, 429 (3d Cir. 1985); United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984); United States v. Crouch, 731 F.2d 621, 624 (9th Cir. 1984); United States v. Fay, 668 F.2d 375, 379 (8th Cir. 1981); United States v. Miller, 664 F.2d 94, 97 (5th Cir. 1981); United States v. DeLillo, 620 F.2d 939, 946 (2d Cir. 1980); Whitehurst v. Wright, 592 F.2d 834, 839 (5th Cir. 1979). We are concerned under these circumstances that, despite any limiting instruction, the jury will misuse the inconsistent statement as substantive evidence, rather than consider it only on the issue of a witness's credibility.

2.      Managing the Prejudicial Effect of Prior Inconsistent Statements

To address this concern, some circuits have adopted a "primary purpose" test, which has its genesis in a 1975 Fourth Circuit case, United States v. Morlang, 531 F.2d 183, 190 (4th Cir. 1975). The court in Morlang held that a party may not intentionally set up the introduction of a prior inconsistent statement by calling a witness who the party knows will offer adverse testimony. Id. at 190. In Morlang, the government called a prisoner in a bribery prosecution, knowing that the prisoner would deny that he made a statement to another prisoner implicating the defendant. Id. The government then called the second prisoner to testify that the first prisoner indeed made such a statement to him. Id. The Fourth Circuit reversed the defendant's conviction, reasoning that the government had used the rule allowing impeachment with prior inconsistent statements to put inadmissible evidence before the jury. Id.

The test announced in Morlang requires courts to determine the calling party's intent. See id. The Morlang court's "primary purpose" test looks to a party's intent in calling a witness and prohibits impeachment of that witness with a prior

inconsistent statement "where employed as a mere subterfuge to get before the jury evidence not otherwise admissible."  Id.; see also United States v. Kane, 944 F.2d 1406 (7th Cir. 1991) ("Impeachment of one's own witness cannot be permitted where employed as a mere subterfuge to present to the jury evidence not otherwise admissible."); United States v. Peterman, 841 F.2d 1474, 1479 (10th Cir. 1988) (holding that government may not "use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable") (citation and quotation omitted); Whitehurst v. Wright, 592 F.2d 834, 839 (5th Cir. 1979) (upholding district court's refusal to allow impeachment where plaintiff called a witness, whose testimony she knew would be unhelpful, for the purpose of impeaching him with a helpful prior inconsistent statement that was inadmissible for substantive purposes on hearsay grounds).

In United States v. Logan, 121 F.3d 1172 (8th Cir. 1997), this court commented on the potential for abusing the ability to impeach one's own witnesses with prior inconsistent statements.  We noted that "'[c]ourts must be watchful that impeachment is not used as a subterfuge to place otherwise inadmissible hearsay before the jury,'" id. at 1175 (quoting United States v. Rogers, 549 F.2d 490, 497 (8th Cir. 1976)), but we disavowed adherence to any rule that would require trial courts to inquire into the state of mind of the party calling the witness to be impeached.  Logan, 121 F.3d at 1175.  In Logan, we cited a collection of cases that focus on determining the government's true motive in impeaching one of its own witnesses with a prior inconsistent statement, and we stated that "the relevant question is simply whether the evidence is admissible under Fed. R. Ev. 403."  Id.

Indeed, even the Fourth Circuit, which formulated the primary purpose rule in Morlang, has stated that "[f]ederal evidence law does *not* ask the judge, either at trial or upon appellate review, to crawl inside the prosecutor's head to divine his or her true motivation."  United States v. Ince, 21 F.3d 576, 580 (4th Cir. 1994).  Instead, to determine whether testimony of a prior inconsistent statement is a "mere subterfuge" to get before the jury otherwise inadmissible hearsay, "the proper inquiry

is whether, as an objective matter and irrespective of the [calling party's] motive, the probative value of a statement for impeaching the credibility of a witness is 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence,' *see* Fed. R. Ev. 403." Logan, 121 F.3d at 1175.

3.      Rule 613(b)

Thus, we must examine Waloke's and Romero's testimony in light of Rule 403's balancing test.  However, before turning to the Rule 403 analysis in this case, we must first determine whether Buffalo met the foundational requirements of a Rule 613(b) prior inconsistent statement.  Under Rule 613(b), a party seeking to introduce a prior inconsistent statement must ordinarily confront the witness with the prior inconsistent statement and afford him or her an opportunity to explain or deny the inconsistency.  United States v. Roulette, 75 F.3d 418, 423 (8th Cir. 1996); accord United States v. Schnapp, 322 F.3d 564, 571 (8th Cir. 2003) ("[E]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless:  (1) the witness is afforded an opportunity to explain or deny the statement and the opposing party is afforded an opportunity to interrogate the witness about the statement or (2) the interests of justice otherwise require.").  In addition, "under Rule 613(b) a witness may not be impeached on a collateral matter by use of extrinsic evidence of prior inconsistent statements.  Contradiction of a witness by prior inconsistent statements may be shown only on a matter material to the substantive issues of the trial."  Id. (internal citations omitted).

In Buffalo's case, Hayes's statement to Waloke and Romero involved matters that were material to the charges against the defendant, and Buffalo squarely confronted Hayes with his inconsistent statements during direct examination.  Hayes denied having confessed or having played any role in the Uses Many attack.  Instead, he testified that he stated to Waloke and Romero that he wished he had assaulted Uses Many.  The government could have pursued Hayes's alleged prior statement

during its cross-examination of him, but the prosecutor chose not to. In short, Buffalo established the proper Rule 613(b) foundation of Hayes's prior inconsistent statements. We, therefore, must consider whether Rule 403 allows Waloke's and Romero's testimony because, as noted above, when a prior inconsistent statement is offered to impeach the calling party's own witness, "the relevant question is simply whether the evidence is admissible under Fed. R. Ev. 403." Logan, 121 F.3d at 1175.

4.      Rule 403 Balancing Inquiry

Rule 403 provides that even relevant evidence should be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The vast majority of cases on the issue of impeaching one's own witness with a prior inconsistent statement speak to the government's use of the statements to impeach its witnesses where the statements inculpate the defendant. For example, in United States v. Ince, 21 F.3d 576 (4th Cir. 1994), within a few hours of a shooting, a witness for the prosecution told police that the defendant admitted to her that he fired the shots in question. In the defendant's trial for assault with a dangerous weapon, that same witness testified that she could not remember what the defendant told her. Id. at 578. After unsuccessfully attempting to refresh her memory with a copy of her statement to the police, the government called the police officer who interviewed her. Id. at 579. He testified that she told him that the defendant had confessed to firing the gun. Id. Reversing the defendant's conviction, the court articulated the danger of admitting this sort of testimony in a criminal trial:

> When the prosecution attempts to introduce a prior inconsistent statement to impeach its own witness, the statement's likely prejudicial impact often substantially outweighs its probative value for impeachment purposes because the jury may ignore the judge's limiting instructions and consider the "impeachment" testimony for substantive purposes. *See MacDonald*, 688 F.2d at 234 (citing *Morlang*, 531 F.2d

-9-

at 190); *State v. Hunt*, 324 N.C. 343, 350, 378 S.E.2d 754, 758 (1989). That risk is multiplied when the statement offered as impeachment testimony contains the defendant's alleged admission of guilt. Thus, a trial judge should rarely, if ever, permit the Government to "impeach" its own witness by presenting what would otherwise be inadmissible hearsay if that hearsay contains an alleged confession to the crime for which the defendant is being tried. *Cf. United States v. Brewer*, 1 F.3d 1430, 1438-39 & n. 2 (4th Cir. 1993) (Widener, J., dissenting) (citing *Morlang*, 531 F.2d at 190).

Id. at 581; accord Wright & Gold, supra, at § 6093 (noting that Congress rejected the Federal Rules of Evidence drafters' intention to exclude prior inconsistent statements from the hearsay rule wholesale because of "[c]oncern that defendants in criminal cases might be convicted based on such prior out-of-court statements").

When the defendant seeks to introduce a prior inconsistent statement for impeachment purposes, the dangers identified above are not implicated. See Walker v. Lockhart, 763 F.2d 942, 952 n.19 (8th Cir. 1985). Simply put, the prejudicial impact of the statement does not endanger the defendant's liberty by risking a conviction based on out-of-court statements that are not subject to confrontation by way of cross-examination. Under the unique circumstances of this case, the value to Buffalo in calling Hayes to the stand was to bolster Buffalo's alibi defense by demonstrating to the jury the striking physical similarities between Buffalo, who Uses Many positively identified as his assailant, and Hayes, who admittedly wished he had been able to "get his hands on" Uses Many. While Waloke's and Romero's testimony of Hayes's confession poses the obvious risk of being misused by the jury as substantive evidence, a limiting instruction could have minimized this risk, especially in light of the government's theory that Hayes's confession was not necessarily exculpatory because several people assaulted Uses Many. Moreover, while not directly pertinent to the conventional Rule 403 balancing test, Buffalo offered significant corroboration of Waloke's and Romero's testimony, such as Waloke's observation of blood on Hayes's shoes after the assault and his identification of the

vehicle that he said Hayes arrived in when he confessed to Waloke, which was the same type and color as the vehicle an eye witness observed at the scene of the crime.

A case out of our circuit, Walker v. Lockhart, 763 F.2d 942 (8th Cir. 1985), provides some guidance in analyzing Buffalo's case. In Walker, the petitioner, Walker, sought a writ of habeas corpus after he was convicted in state court of first degree murder for the shooting death of a police officer. Id. at 946. In this pre-Antiterrorism and Effective Death Penalty Act of 1996 case, the question before the court was whether certain newly discovered evidence "tip[ped] the balance of the ends of justice standard to permit [the Court of Appeals] to reconsider the merits of the claims raised in Walker's first habeas petition." Id. at 949. The newly discovered evidence consisted of an exculpatory diary entry and confessions allegedly made by one of Walker's companions who was with Walker on the night of the shooting, Russell Kumbe. Id. Kumbe did not testify at any of the petitioner's prior proceedings, and his former wife came forward with the diary and confession evidence nearly fifteen years after the murder when she found Kumbe's diary. Id. at 948. The diary entry indicated that Kumbe felt remorse for the shooting of the police officer, and Kumbe's former wife maintained that he confessed his role in the murder to her on several occasions. Id. This court held that this newly discovered evidence was sufficient to entitle Walker to habeas corpus relief. Id. at 952.

Clearly much of the force of the Walker decision was obliterated by the Antiterrorism and Effective Death Penalty Act of 1996's imposition of strict limitations on successive habeas petitions. See 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."). Nevertheless, the Walker case bears on the issue raised in this appeal because the Walker court considered the admissibility of Kumbe's prior statements for impeachment purposes, regardless of whether the defense or prosecution called him to testify in the new trial. The court reasoned,

It may be that Kumpe's diary and his statements to Davidson and others, as hearsay, would not be admissible as substantive evidence at a new trial. Nevertheless, such evidence could at least come before the jury for purposes of impeachment. It is reasonable to assume that if the State retries Walker, Kumpe would again be called as a witness, and that he would be available to testify. . . . On cross-examination, the defense could ask Kumpe whether he fired a gun that night. If Kumpe's answer is no, he could then be asked about the diary entry, and about other newly discovered evidence indicating that he fired a weapon that night. If Kumpe admits the diary entry and other statements now attributed to him, then, as Judge Arnold explained in voting to recall the mandate,

> the fact of these prior inconsistent statements would then be before the jury, together with whatever explanation Kumpe might wish to offer. If, on the other hand, he denies making the alleged prior inconsistent statements, extrinsic evidence of these statements, including the diary itself and the testimony of Kumpe's former wife, could be offered for impeachment purposes. See Jones, Case Note, Roberts v. State: *A Limitation on the Impeachment of Witnesses by Extrinsic Evidence of Prior Inconsistent Statements*, 37 Ark. L. Rev. 688 (1984). In either event, the jury would know about the diary entry and the alleged oral admissions. It would have an opportunity to observe Kumpe in person and to assess his credibility in light of all the circumstances, including the prior inconsistent statements. . . .

Even if the State does not call Kumpe as a witness, the defense may do so. The State argues, citing *Allen v. State*, 281 Ark. 1, 660 S.W.2d 922, 924 (1983), that Arkansas law does not permit a party to call a witness merely to lay a foundation for a prior inconsistent statement. However, in the present case, the defense would undoubtedly wish to call Kumpe not merely for impeachment purposes, but for the substantive purposes of establishing that Vaughan [the decedent police officer] fired first and that Kumpe owned the murder weapon and had it in his possession on April 16, 1963 [the night of the murder]. On cross-examination, Kumpe would very probably offer his account of the

-12-

shooting. The defense would then, on redirect, have an opportunity to impeach Kumpe with his prior inconsistent statements.

Id. at 951-52 (footnotes omitted).

In a footnote, the Walker court opined that the probative value of Kumbe's statements would likely outweigh "'the prejudicial effect arising from the danger that the jury will give substantive effect to the prior inconsistent statement.'" Id. at 952 n.19 (citation omitted). Similarly in Buffalo's case, regardless of who ultimately calls Hayes in a new trial, the probative value of his testimony outweighs the possibility that the jury will discard the court's limiting instruction and consider the testimony for the truth of the matter asserted.

In our view, the testimony should have been allowed at Buffalo's trial, and the district court abused its discretion by failing to conduct a Rule 403 inquiry. Eighth Circuit case law clearly provides that the probative value of a Rule 613(b) prior inconsistent statement must be weighed against the prejudicial effect of its admission, Logan, 121 F.3d at 1175, but the district court flatly rejected the proffered testimony as being a "strawman" issue without giving any consideration to Rules 403, 607, or 613(b). We cannot say that the court's failure to conduct a Rule 403 inquiry and its categorical exclusion of Waloke's and Romero's testimony was harmless error. See United States v. Wilcox, 50 F.3d 600, 603 (8th Cir. 1995) (citation omitted) ("An error is harmless if the reviewing court, after reviewing the entire record, determines that no substantial rights of the defendant were affected, and that the error did not influence or had only a very slight influence on the verdict."). We, therefore, reverse and remand for a new trial.

## C. Prior Fights

Because Buffalo is entitled to a new trial based on the above discussion, we need not address the bulk of his other arguments in support this appeal. However, we

pause briefly to reject his contention that the district court abused its discretion in prohibiting him from introducing evidence of prior fights in which the victim, Uses Many, was involved. Buffalo did not claim self defense, and the evidence at trial showed that Uses Many was unarmed and was ambushed by his attackers. Buffalo correctly points out that there is some value to putting in evidence to show Uses Many's propensity for instigating fights, which tends to show that many people had a motive to attack him. However, given Buffalo's defense at trial was that he was in another city at the time of the assault, the value of this evidence is minimal. We cannot say that the district court abused its discretion in deciding that the relevance of Uses Many's past altercations was outweighed by its prejudicial effect. See United States v. Tomberlin, 130 F.3d 1318, 1320 (8th Cir. 1997) (noting abuse-of-discretion standard of review). Therefore, we affirm the district court's ruling on the admissibility of Uses Many's prior fights.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's exclusion of evidence of prior fights involving the victim but reverse and remand for further proceedings because the district court failed to conduct a Rule 403 inquiry before excluding prior inconsistent statements of a confession to impeach defense witness Hayes, which we cannot say was harmless error.

_____