HARTZ, Circuit Judge,
concurring in part and dissenting in part:
I join fully in parts I, II A, and II B of Judge Baldock’s opinion. With regard to the impeachment issue discussed in part II B, I write separately to raise a question about an issue we did not need to address in resolving this appeal although it was briefed by the parties. I respectfully dissent on the Booker issue.
I. Impeachment
Defendant complains about the admission into evidence of an out-of-court statement by her father, Mr. Clifton, in which he allegedly said that Defendant had told him that she had bought a cell phone for Jaime Mendoza. The ground for admission was that it impeached contrary testimony by Mr. Clifton during direct examination by the government. Defendant argues that the government’s primary purpose in introducing evidence of the prior statement was not to impeach Mr. Clifton — thát is, to convince the jury that he was not credible — but to use the prior statement as substantive evidence — that is, to persuade the jury that Defendant had in fact purchased the cell phone for Mr. Mendoza, thereby establishing her perjury. The prior statement was not admissible as substantive evidence because it was hearsay. See Fed.R.Evid. 801(c), (d)(1)(A). Defendant relies, quite properly, on a line of Tenth Circuit cases including United States v. Peterman, 841 F.2d 1474 (10th Cir.1988), for the proposition that it would be improper for the prosecution to proffer the prior inconsistent statement if the prosecution was “introducing] evidence under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible.” Id. at 1479 (internal quotation marks omitted). Our circuit has not been alone in this view. See, e.g., United States v. Zackson, 12 F.3d 1178, 1184 (2d Cir.1993); United States v. Miller, 664 F.2d 94, 97 (5th Cir.1981); United States v. Webster, 734 F.2d 1191, 1192 (7th Cir.1984).
The Peterman rule strikes me as passing strange. Why should the admissibility of evidence depend on the state of mind of the attorney proffering the evidence? To be sure, the prosecutor’s motive plays a limited role in some legal issues: Racially motivated peremptory jury challenges are prohibited, see Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and a defendant cannot be retried after a mistrial caused by prosecutorial misconduct intended to force a mistrial, see Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). But it is hard to find support in the Federal Rules of Evidence for considering attorney intent as a factor in determining admissibility. Instead, as one would expect, we look at factors relating to the probative and unfairly prejudicial impact of the evidence. Of course, the more sucb prejudicial impact exceeds the probative value, the greater the likelihood that the prosecutor’s motive in proffering the evidence was impure. But when the unfairly prejudicial impact substantially predominates, we should not admit the evidence just because the prosecutor’s thoughts are pure, nor should we exclude evidence on the ground of prosecutorial obliquity when the probative value is not substantially outweighed by the danger of unfair prejudice. There is significant authority for my view. See United States v. Ince, 21 F.3d 576, 580 (4th Cir.1994) (“Federal evidence law does not ask the judge ... to crawl inside the prosecutor’s head to divine his or her true motivation.”); United States v. Buffalo, 358 F.3d 519 (8th Cir.2004); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 607.02[2][b] (2d *1186 ed.2004); 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6093 (1990) (recommending Rule 403 approach to propriety of admitting impeachment evidence, although suggesting that it may be useful to incorporate Rule 403 explicitly in Rule 607). I trust that we will have occasion to revisit this issue.
II. Booker Issue
Perjury is always a serious crime. But not all perjury is equally serious. I think almost everyone would agree that perjury to thwart a shoplifting investigation is not as serious as perjury to thwart a murder investigation.
To incorporate this proposition in the calculation of the proper punishment for perjury, the Sentencing Guidelines provide that “[i]f the offense involved perjury ... in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.” USSG § 2J1.3(c)(1). Thus, when perjury occurs before a grand jury investigating an offense, the perjurer will be treated as an accessory after the fact to the offense if that treatment increases the offense level for the perjury. To be sure, the perjurer may not be, strictly speaking, an accessory after the fact, because an accessory after the fact must “know[ ] that [the] offense against the United States has been committed.” 18 U.S.C. § 3. But the Sentencing Commission could reasonably and properly decide that for purposes of punishing perjury the knowledge requirement should be relaxed. After all, perjury during the investigation of a criminal offense undoubtedly “assists the offender in order to hinder or prevent his ... trial or punishment.” Id.
In this case the guidelines treated Defendant as if she were an accessory after the fact to the crime of distributing 1.4 kilograms of cocaine base. The panel opinion proclaims this as unfair in part because the government “did not have any evidence of [her] involvement in drug trafficking whatsoever.” Op. at 19. It seems to me, however, that her participation in trafficking is irrelevant. Indeed, one who participates in an offense cannot also be an accessory after the fact to that offense. See 2 Wayne R. LaFave, Substantive Criminal Law § 13.6(a), at 402-03 (2d ed.2003).
What is relevant is that the perjurer know the severity of the crime being investigated by the grand jury. In this regard, drug offenses may be problematic because the offense’s severity depends on the quantity of drugs involved. If all that the perjurer knew when testifying is that the grand jury was investigating a drug offense, it may well be unfair to sentence the perjurer on the basis that the drug offense was a major narcotics conspiracy rather than a street transaction.
But that is not a problem here. When Defendant first appeared before the grand jury, she was informed that “[t]he criminal investigation that is being considered as we speak is a drug trafficking investigation involving crack cocaine trafficking in Albuquerque.” ILApp. at 303. At her sentencing hearing both DEA agents testified that when they originally interviewed Defendant they told her they were investigating the source of about four pounds (actually three) of crack cocaine whose seizure had been reported by the media. Although Defendant challenged the agents’ testimony, the sentencing judge found that she knew or should have known that the investigation concerned one to four kilograms of crack cocaine.
In my view this case does not present a breakdown of the guideline system. Reasonable people may differ regarding the appropriate sentence in this case. The sentencing judge himself expressed a de *1187 sire to impose a lighter sentence. But there is not in this case, as there was in United States v. Trujillo-Terrazas, 405 F.3d 814 (10th Cir.2005), a peculiarity not accounted for in the guidelines. Accordingly, in applying the fourth prong of the plain-error test, see United States v. Gonzalez-Huerta, 403 F.3d 727 (10th Cir.2005); id. (Hartz, J., concurring), I see no purpose served by a remand for resentenc-ing except to accommodate the personal predilections of the sentencing judge.
I would affirm the sentence.