# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1186

_____

United States of America

*Plaintiff - Appellee*

v.

Devion Marquette Cumbie

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: December 17, 2021
Filed: March 17, 2022

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury found Devion Marquette Cumbie guilty of production and attempted production of child pornography and extortion. Cumbie appeals, arguing the district court[1] erred in (1) prohibiting the defense from cross examining a government witness

_____

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

with extrinsic evidence of a text message in which he allegedly confessed to the charged crimes; (2) denying challenges to the government's peremptory strikes under Batson v. Kentucky, 476 U.S. 79 (1986); and (3) not striking a juror who expressed safety concerns prior to deliberations. We affirm.

## I. The Evidentiary Issue

A six-count indictment issued in July 2019 charged Cumbie with production of child pornography in violation of 18 U.S.C. § 2251(a) and extortion in violation of 18 U.S.C. § 875(d). The trial ended in a mistrial when the jury failed to reach a unanimous verdict. A seven-count superseding indictment issued in June 2020 charged Cumbie with three counts of attempted production and production of child pornography committed against three minor female victims, and four counts of extortion committed against two of those victims and two adult female victims. After a second trial, the jury found Cumbie guilty of all seven counts.

At both trials, the government introduced evidence that Cumbie created a fake Facebook account in September 2018 impersonating Chink Capone, an internet celebrity and comedian. Cumbie allegedly used the account to solicit nude photographs and videos from the female victims, and then threatened the victims that he would post their photos on the internet if they did not cooperate by sending more explicit content. At both trials, Cumbie's defense was that Eric Primeaux -- who lived with Cumbie in the fall of 2018 -- had access to his cell phone and password and sent the illegal messages.

Prior to the first trial, defense counsel advised government counsel that Sasi Cervantes-Cumbie, Cumbie's girlfriend in the fall of 2018 and now his wife (hereafter referred to as "Sasi" for convenience), had provided counsel with screenshots of more than one hundred text messages exchanged between Sasi and

Primeaux's cell phone from November 7, 2019, to January 29, 2020. They included this December 7 text message purporting to be from Primeaux to Sasi:

> I wanna be honest with you and no secrets between us I'm the reason devion got charged with child porn I was using his phone and a fake account to get pictures and sell them but since he's getting charged we can be together and work on us

On February 10, 2020, the government filed a motion in limine to preclude Sasi from offering this testimony because it is inadmissible hearsay. The government argued:

> On January 31, 2020, [FBI Special Agent Aaron] Hurst interviewed Mr. Primeaux [who] vehemently denied sending the text message. Mr. Primeaux stated that [Sasi] asked to use his cellular telephone and must have sent the message to herself from his phone in an attempt to frame him. . . . Any testimony from [Sasi] is hearsay and there are no exceptions to its admission.

Cumbie's Response argued that the hearsay statement contains sufficient circumstantial guarantees of trustworthiness to be admissible under Chambers v. Mississippi, 410 U.S. 284 (1973), which recognized a due process right to provide "a meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotation omitted). At a pretrial conference, defense counsel stated that his Response did not allege that Primeaux is unavailable or cite the statement-against-interest hearsay exception in Rule 804(b)(3) of the Federal Rules of Evidence or the residual exception in Rule 807. But counsel argued the circumstances that "make this trustworthy . . . would allow it under the residual hearsay exception [and under] Chambers and Holmes." On the eve of trial, the government further requested that the court prohibit Cumbie from impeaching Primeaux, who was listed as a defense witness, with the text message either by questioning or with extrinsic evidence.

After hearing argument from both sides, the district court preliminarily ruled that the text message was unreliable hearsay that could not be admitted under the complete-defense hearsay exception of Chambers but invited a contrary defense proffer. At the close of the government's case in chief, the defense made a proffer regarding the text message before calling Primeaux as its first witness. Sasi and Primeaux testified at length regarding their exchange of text messages. The court then ruled:

> [The text message confession] is hearsay. There isn't any exception. I know that there's this what I'll call the Chambers exception, but we don't have the sufficient guaranties of trustworthiness that they had there. . . . [E]veryone admits that [Sasi] had possession of Mr. Primeaux's phone on the very night that it is alleged that this text was sent, coupled with the fact that she's married to Mr. Cumbie and coupled with the fact that in past cases, she's been willing to do whatever she can to help him out. And so it's for those reasons that I'm going to . . . find that the confession itself is unreliable and improper hearsay and that the Chambers exception doesn't apply in this case [and] that Mr. Cumbie's [ ] due-process rights are met because he can still put on his defense, just not use this piece of hearsay to do so . . . .

The court then turned to whether the defense could call Primeaux as a witness and impeach him with the text message confession:

> I just don't know of . . . any case that says that you could take a situation like this where I've ruled that the evidence, whether it's a confession or otherwise, is unreliable, ask somebody about that, and use that . . . to essentially sidestep . . . the evidentiary ruling.
>
> And so I think you can impeach Mr. Primeaux if he gets up there and makes an inconsistent statement, but I'm not going to allow you to interject either through Mr. Primeaux or through [Sasi] the issue of the confession in the text message. . . . [T]hat [Sasi] said it happened

doesn't necessarily give you a good-faith reason to ask the question, especially in light of my ruling.

At the start of the second trial, the district court incorporated the record from the first trial, including this evidentiary ruling. At trial, just before the government called Primeaux as a witness, defense counsel reproffered its proffered testimony from the first trial and renewed Cumbie's request to question Primeaux about the text message confession. The district court observed that nothing had changed:

> [Defense Counsel]: The only thing that is now changed . . . is that this witness is going to be called as a government witness[.] . . . I should be able to impeach him and ask him if he sent that message, and he can deny it if he chooses. . . .

> THE COURT: My ruling was [on] a motion in limine, and if I think they have opened the door or you do, fine, but just because they are calling him instead of you calling him doesn't change that posture.

Primeaux then testified at length concerning, in particular, his access to and use of Cumbie's cell phone when the two lived together in the fall of 2018. He was not questioned about his exchange of text messages with Sasi in late 2019, which included the text message confession that Sasi claimed she received from Primeaux's cell phone. Primeaux denied knowing the password to access Cumbie's phone, which was used to commit the pornography production and extortion offenses, and denied using Cumbie's phone illegally. After the government rested, Cumbie testified that Primeaux had unlimited access to Cumbie's phone, he gave Primeaux the password, they both used the phone, and Cumbie never used it to extort or to solicit nude pictures of female minors.

On appeal, Cumbie argues the district court erred in precluding him from putting the text message confession before the jury at trial. Our abbreviated summary hopefully makes clear that, over the course of two trials, this issue presented a

moving target for the district court. The government's initial position was straightforward -- the text message is inadmissible hearsay. Cumbie responded with three contrary propositions. First, he contended it is admissible into evidence under the due process right to present a complete defense recognized in Chambers. Second, he suggested it is admissible into evidence under the hearsay exception in Rule 804(b)(3) for statements against the penal interest of an unavailable declarant and the residual hearsay exception in Rule 807. Third, he argued the text message is extrinsic evidence of a prior inconsistent statement that may be used to impeach Primeaux under Rule 613(b), whether he is a witness for the defense, as in the first trial, or for the prosecution, as in the second trial. Only the third theory is argued on appeal. But all three theories are relevant to our conclusion that the district court did not abuse its discretion by limiting Cumbie's cross examination of government witness Primeaux in the second trial.

In granting the government's motion in limine at the first trial, the district court initially focused on the Chambers due process argument that was Cumbie's response to the government's motion. Chambers permits the introduction of otherwise-inadmissible hearsay if it has "persuasive assurances of trustworthiness." 410 U.S. at 302. Based on the proffered direct and cross examination testimony of Sasi and Primeaux, the district court concluded that Cumbie had not met his burden on this issue. Sasi, now married to Cumbie, initiated contact with Primeaux a year after the illegal messages to female victims from Cumbie's phone at issue in the criminal case. After a series of text messages full of sexual innuendos between them, Sasi came to Primeaux's residence and requested to use his phone on the night the text message confession was sent. The message was different in style from others Primeaux sent to Cervantes. It referred to Cumbie as "devion," when Primeaux only knew him by his initials, "DMC." No other message discussed or acknowledged the confession; the next conversation between Sasi and Primeaux came six weeks later and concerned going to the gym. The government's cross exam of Sasi brought out that she had helped a witness write an exonerating affidavit on behalf of Cumbie in a prior criminal

-6-

case, and had helped another roommate of Cumbie and Primeaux write an affidavit stating he had seen Primeaux use Cumbie's phone. Based on this testimony, the district court concluded the Chambers hearsay exception did not apply due to the overwhelming unreliability of the confession. The proffered evidence demonstrated that Sasi sent the text message to herself to support Cumbie's trial defense. Cumbie renewed this argument at the second trial but does not press it on appeal.

The second theory Cumbie does not press on appeal, the hearsay exceptions in Rules 804(b)(3) and 807, are likewise defeated by this conclusion. It is not surprising that Cumbie did not press the Rule 804 theory because this hearsay exception only applies when the declarant is "unavailable." Fed. R. Evid. 804(a). There are prior Rule 804 decisions suggesting that Primeaux might arguably have been unavailable at the first trial even though listed as a defense witness. However, Rule 804(b)(3)(B) expressly provides that the statement against interest must be "supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." Likewise, to be admissible under the residual hearsay exception in Rule 807, a statement must be "supported by sufficient guarantees of trustworthiness." The district court's conclusion that the text message confession was overwhelmingly unreliable defeats these claims. See United States v. Halk, 634 F.3d 482, 489 (8th Cir. 2011); United States v. Bobo, 994 F.2d 524, 528 (8th Cir. 1993).

Cumbie's third theory is that he should have been allowed to impeach Primeaux with the text message confession under Rule 613(b), which provides in relevant part, "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement." During the second trial, Cumbie argued that Primeaux would be called as a government witness and "I should be able to impeach him and ask him if he sent that message, and he can deny it if he chooses." The district court did not foreclose that: "[I]f I think they have opened the door or you do, fine." The government on direct examination did not ask

Primeaux whether he had used Cumbie's phone to send illegal messages to the victims. So Cumbie is left to complain that the court barred him from asking Primeaux that question on cross examination and then impeaching him with the text message confession received by Sasi one year later. Cumbie argues that, in making this ruling, the district court abused its discretion by failing to conduct a Rule 403 analysis that weighs "the probative value of a Rule 613(b) prior inconsistent statement . . . against the prejudicial effect of its admission." United States v. Buffalo, 358 F.3d 519, 527 (8th Cir. 2004), citing United States v. Logan, 121 F.3d 1172, 1175 (8th Cir. 1997).

"Although extrinsic evidence may be used for impeachment by prior inconsistent statement, such extrinsic evidence must still be authenticated." United States v. Craig, 953 F.3d 898, 904 (6th Cir. 2020). That was not at issue in Buffalo, 358 F.3d at 524. In this case, the district court concluded that the text message confession "is unreliable and improper hearsay." Cumbie argues he established adequate foundation in the proffered testimony of Sasi and Primeaux establishing that Primeaux admitted sending many messages to Sasi from his cell phone, denying only the text message confession that was sent from Primeaux's phone and received by Sasi. But Cumbie admitted he had no evidence corroborating that *Primeaux* sent the text message confession, and the proffered testimony as a whole persuaded the district court that Cumbie had no good faith basis to question Primeaux about its text. As the district court put it, "that [Sasi] said it happened doesn't necessarily give you a good-faith reason to ask the question." Therefore, this extrinsic evidence lacked "probative value" and was therefore not "relevant" under Rule 401. As Rule 403 applies only to the exclusion of "relevant evidence," explicit Rule 403 balancing was not needed.

There is a second reason why Cumbie's Rule 613(b) theory fails to establish an abuse of the district court's discretion "to impose . . . reasonable limits on cross examination." United States v. Williams, 796 F.3d 951, 961 (8th Cir. 2015). Cumbie wanted the text message confession admitted as substantive evidence supporting his

defense that Primeaux, not Cumbie, sent illegal communications to the victims *from Cumbie's phone*. This is reflected in his response to the government's motion in limine, which raised the <u>Chambers</u> theory and alluded to the Rules 804(b)(3) and 807 theory. Both of those theories would have made the text message admissible as substantive evidence supporting Cumbie's "he did it" defense.

Not so the later-asserted Rule 613(b) theory. "Ordinarily a prior inconsistent statement is admissible [under Rule 613(b)] only for the purpose of impeachment and not as substantive evidence." <u>United States v. Feliciano</u>, 761 F.3d 1202, 1210 (11th Cir. 2014). When offered for this purpose, rather than for the truth of the matter asserted, "it is not hearsay." <u>United States v. Watkins</u>, 591 F.3d 780, 787 (5th Cir. 2009). If Primeaux testified during Cumbie's cross examination that he did not send the text message confession to Sasi from *Primeaux's phone*, and Cumbie then impeached him with this extrinsic evidence, the jury would be instructed that the text message was not being admitted to prove the truth of the matter asserted. <u>See</u> <u>United States v. Eagle</u>, 498 F.3d 885, 888-89 (8th Cir. 2007). Being thus limited to the issue of Primeaux's credibility, admission of the text message confession would add almost nothing of probative value to Cumbie's "he did it" defense, especially in light of the other evidence of Cumbie's guilt, and it would likely trigger a distracting, confusing mini-trial between Primeaux and Sasi regarding who authored a text message confession written long after the illegal communications at issue.

The Confrontation Clause protects a criminal defendant's constitutional right to confront the witnesses against him. However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues . . . or interrogation that is . . . only marginally relevant." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986). That includes the discretion to require a party to lay a proper foundation before presenting extrinsic impeachment evidence under Rule 613(b). <u>See</u> <u>United States v. Chavez</u>, 979 F.2d

1350, 1355-56 (9th Cir. 1992). For the reasons stated, the district court did not abuse its discretion in limiting Cumbie's use of Rule 613(b) in a manner that did not prevent his assertion of the defense "that someone else committed the crime." Holmes, 547 U.S. at 327.

## II. The Batson Issue

"The government violates the equal protection clause if it uses a peremptory strike to remove a potential juror solely because of his or her race." United States v. Lewis, 593 F.3d 765, 770 (8th Cir. 2010), citing Batson, 476 U.S. at 89. During voir dire, the government used three of its six peremptories to strike black potential jurors. Cumbie, who is black, objected to the strikes under Batson. After hearing the government's reasons for each strike, the district court denied Cumbie's objections, finding the reasons were race-neutral and not pretextual. The trial jury included one black juror. On appeal, Cumbie argues the district court erred in denying his objections because the government's "pattern of strikes against black jurors, the disparate questioning of black jurors, and the side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not, establishes that the Government was motivated in substantial part by discriminatory intent targeting black jurors based solely on race." Our standard of review on this issue is "highly deferential. On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." Flowers v. Mississippi, 139 S. Ct. 2228, 2244 (2019) (cleaned up).

Batson provides a three-step process for determining when a strike is discriminatory:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties'

submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Foster v. Chatman, 136 S. Ct. 1737, 1747 (2016) (quotation omitted). The standard the government must meet to justify its use of peremptory strikes is "extremely low." Moran v. Clarke, 443 F.3d 646, 652 (8th Cir. 2006) (citation omitted). "[W]e have upheld the use of very fine distinctions between jurors." United States v. Morrison, 594 F.3d 626, 633 (8th Cir. 2010).

Cumbie's first objection challenged the peremptory strike of Prospective Juror (PJ) 2, a black male. The government stated that it struck PJ 2 because he had been arrested and charged with battery a year before the trial and because his childhood friend had been convicted for an offense also prosecuted by the United States Attorney for the Eastern District of Arkansas. Cumbie argues that other prospective jurors who had encounters with law enforcement or had close friends or family members convicted of crimes were not struck. But PJ 2 was the only prospective juror charged with a crime, and it happened only a year prior to the trial. The district court did not clearly err in finding that the government's race-neutral reason was not pretextual.

Cumbie's second Batson objection challenged the government's strike of PJ 5, a black female. The government initially moved to strike PJ 5 for cause because she was equivocal when asked whether she would consider the upbringing and maturity of the victim in deciding the child pornography counts. The district court declined to strike PJ 5 for cause. When the government then used a peremptory to strike PJ 5, the court accepted this as a non-pretextual race-neutral reason. Cumbie argues other prospective jurors were similarly equivocal regarding their ability to follow the law as to a victim's age or maturity but were not struck by the government. But he cites statements from the court's initial questioning whether anyone was uncomfortable with the law. When the court then asked if anyone could not follow the law as stated, the government struck three white jurors who raised their hands for cause. The court

-11-

then asked who could follow the law. PJ 5 was the only prospective juror who did not raise her hand. Although the court denied the government a strike for cause, a peremptory "need not rise to the level justifying exercise of a challenge for cause." Batson, 476 U.S. at 97. The district court did not clearly err in finding that PJ 5's equivocation and indecisiveness regarding whether she could follow the law was a nondiscriminatory race-neutral reason for the strike.

Cumbie's final Batson objection challenged the government's strike of PJ 14, a black female. The government stated that it struck PJ 14 because her son and the father of her children were both incarcerated, she became emotional when discussing the impact of the father's conviction on her family, and the jury would learn that Cumbie, too, was a father. The court denied Cumbie's Batson challenge, finding this reason was not pretextual. Cumbie argues the government did not strike other members of the jury pool whose close relatives had been arrested and convicted. But PJ 14 was the only prospective juror whose close relative was in a family situation similar to Cumbie's, and was the only one who became noticeably emotional when discussing the topic. "There is no Batson violation when a juror is dismissed because the juror's relatives have been prosecuted or convicted of a crime." United States v. Crawford, 413 F.3d 873, 875 (8th Cir. 2005). A juror's "demeanor and body language may serve as legitimate, race-neutral reasons" to distinguish and strike a juror. United States v. Hampton, 887 F.3d 339, 342 (8th Cir. 2018) (cleaned up). The district court did not clearly err in finding these were nondiscriminatory race-neutral reasons to strike PJ 14.

## III. The Biased-Juror Issue

After the close of argument but before deliberations, a juror emailed the district court expressing concern about her safety "between today's decision and sentencing," because she had heard a threatening comment Cumbie directed to Primeaux in open court. Cumbie moved to strike the juror for bias, arguing the email showed the juror

had decided the case prior to deliberations. The court denied the motion but then questioned the juror in an in camera hearing. After the court answered the questions posed by the juror in her email, the juror stated that she could fairly and impartially deliberate the case with her fellow jurors. Cumbie then renewed his motion to strike the juror, arguing that the juror is

> extremely fearful of my client and what can happen in her words between today's decision and sentencing. I don't know how that could not affect her in her deliberations and make her less likely to reasonably consider a not guilty verdict while deliberating.

Noting that any fear the juror had would "have her leaning toward . . . a not guilty verdict as opposed to [guilty]," the court denied the motion. On appeal, Cumbie argues the court abused its discretion in denying his motion to replace this juror with an alternate. "If the record shows a legitimate basis for the district court's decision to retain the juror, there is no abuse of discretion. . . . [A] district court does not abuse its discretion by refusing to excuse a challenged juror after the juror affirmed [her] impartiality and the judge favorably evaluated [her] demeanor." United States v. Dale, 614 F.3d 942, 959 (8th Cir. 2010) (citations omitted).

To protect a defendant's right to a fair trial, "a jury must refrain from premature deliberations in a criminal case." United States v. Gianakos, 415 F.3d 912, 921 (8th Cir. 2005). But here there is no evidence of premature deliberations among the jurors. Nor is there evidence the concerned juror held any prior bias against Cumbie or acquired extrinsic evidence outside the courtroom. Id. at 923. Her email to the district court came after the final day of trial, when all evidence had been presented. Even if the email raised an inference that the juror had formed a preliminary opinion before going into deliberations, "there is nothing wrong with a juror being influenced by prior testimony." Id., citing United States v. Evans, 272 F.3d 1069, 1079-80 (8th Cir. 2001). Having observed the juror's demeanor during the in camera hearing, the

district court credited her assurance she could fairly and impartially deliberate with her fellow jurors. The court not abuse its discretion in denying Cumbie's motion to strike.

## IV.  Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____