# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1465
_____

United States of America

*Plaintiff - Appellee*

v.

Grant Cramer

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs
_____

Submitted: January 14, 2020
Filed: June 12, 2020
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

LOKEN, Circuit Judge.

Grant Cramer pleaded guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The district court[1] sentenced Cramer to 120 months imprisonment -- the statutory maximum for his offense -- followed by eight

_____

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

years of supervised release subject to numerous conditions. Cramer appeals arguing the district court based its sentence on clearly erroneous fact findings, a contention not preserved for appeal; imposed a substantively unreasonable sentence; and abused its discretion in imposing special conditions of supervised release. We affirm.

## I. Background

In April 2017, Cramer had lived at the Massena, Iowa home of Sandra Clark and her 17-year-old daughter, T.B., for about four years. Clark reported to the Cass County Sheriff's Department that the 45-year-old Cramer had sexually assaulted T.B. The Sheriff's Department interviewed Clark and T.B. Clark, who worked two jobs, said she had entrusted Cramer with the supervision of T.B. because she was concerned with T.B.'s "very sexually active" behavior. Clark made Cramer the custodian of all cell phones, tablets, and computers in the house to curb T.B.'s practice of taking sexually explicit photos of herself and posting them on the Internet or texting them to boys. T.B. reported that Cramer as her custodian assisted T.B. in producing explicit pictures and videos. He set up a laptop so she could record videos of herself in her bedroom or the shower, directing her to expose her vaginal area and to masturbate, and gave T.B. an electric toothbrush to "stimulate herself" while making a video. T.B. said Cramer used a digital camera to take explicit pictures of her, telling her how to pose, what to wear, and where to sit.

Clark asked the Sheriff's Department to remove Cramer from her house because T.B. would not go home while Cramer remained. Deputies entered the locked home through a kitchen window and found Cramer in his basement room, packing a backpack and surrounded by several electronic devices. Cramer denied any sexual contact with T.B. but admitted that he set up a laptop so she could record herself masturbating with an electric toothbrush he provided and told T.B. she could send the pictures to her boyfriend but not post them on the Internet. Cramer consented to having the electronic devices in the room searched. T.B. testified to a

grand jury that, after the deputies and Cramer left, she discovered a handwritten note on his desk listing names, "what they liked," and prices.

Forensic analysis of the devices recovered from Cramer's room revealed sexually explicit depictions of T.B. on a laptop, a tablet computer, a thumb drive, and a cell phone. The laptop contained pictures of T.B. taken by another device and transferred to the laptop, and a series of Skype messages showing that someone had shared images of T.B. with others. Two messages indicated payment had been requested. The tablet contained a video of T.B. displaying her vaginal area and masturbating with an electric toothbrush. The thumb drive contained similar videos. The SD card contained evidence that images of T.B.'s vaginal area and one video had been transferred to the phone but later deleted along with sexually explicit images of Cramer. The probation office attributed 242 images to Cramer based on recovered images and videos. Cramer pleaded guilty to possession of child pornography without a plea agreement.

## II. Sentencing Procedural Issues

A draft presentence investigation report ("PSR") was filed with the court and provided to the parties. Two aspects of the PSR form the basis for Cramer's first contention on appeal. They are distinct and will be separately summarized.

**A.** First, Paragraph 25 of the PSR recommended that Cramer be assessed a two-level increase under USSG § 2G2.1(b)(2)(A) based upon facts alleged in Paragraphs 8 and 9:

> 8. On April 16, 2017, the Cass County Sheriff's Office was contacted by Sandra Clark, who reported that her 17-year-old daughter (T.B.) had been forced to perform sex acts on a 45-year-old male, Grant Cramer, who was living with

them in rural Cass County, Iowa. Cramer had been living at the Clark residence for approximately four years.

9. When interviewed by law enforcement, T.B. reported that she was left at home on a regular basis with Cramer as Clark worked two jobs and wasn't home a great deal, particularly in the evenings. T.B. reported that in order to go out with her friends or to use her school computer, she was required to perform oral sex on Cramer.

Cramer's written objections to Paragraphs 8 and 9 stated, "Defendant denies any sex act took place between him and T.B." He did not object to Paragraph 25. The probation officer's Addendum stated that the information in Paragraphs 8 and 9 was gleaned from law enforcement records and the government's offense conduct statement. "This issue is unresolved."

Prior to sentencing, Cramer submitted a Sentencing Memorandum reiterating that he denies "T.B. performed sex acts on defendant" but conceding "that even if the court sustained all of defendant's objections, the recommended guideline range would be in excess of 120 months, the statutory maximum." Cramer argued against imposing the recommended conditions of supervised release, arguing "punishment will be sufficient" and the recommended conditions "have simply become boilerplate for any sex offense." The government's Response argued for the statutory maximum 120-month sentence and in favor of the recommended supervised release conditions. The government also submitted transcripts of the grand jury testimony of T.B. and forensic investigator Darin Morrissey to support the sexual act and distribution allegations contested by Cramer.

At the start of the sentencing hearing, the government stated that it was submitting the grand jury testimony but was not calling live witnesses because Cramer "doesn't object to the whole paragraphs, he just objects to part of it."

Defense counsel advised that Cramer would not offer additional evidence, conceding "that even if the Court were to sustain Defendant's objections, it would not change the guideline recommendation." The district court then found: "based on the matters contained in the grand jury transcripts, Exhibits 1 and 2, that the behavior in . . . paragraphs 8 and 9 of the presentence report occurred" and the specific offense characteristic found in paragraph 25 was appropriately applied. Cramer did not object. In arguing against the recommended conditions of supervised release, defense counsel stated, "we are expecting that the Court will impose a statutory maximum, which is ten years. . . . What Mr. Cramer did was criminal. . . . He's going to receive a substantial sentence for it, and we think the sentence itself is appropriate."

On appeal, represented by a different Assistant Federal Public Defender, Cramer argues for the first time that the district court committed procedural error by basing the sentence on an unproven fact -- that Cramer forced T.B. to perform oral sex. The two-level increase in USSG § 2G2.1(b)(2)(A) applies if the offense involved "the commission of a sexual act or sexual contact," terms the guideline defines in Application Note 2 by cross references to 18 U.S.C. § 2246(2) and (3). Forced oral sex would obviously meet that definition. Cramer argues the only question and answer in T.B.'s grand jury testimony that could even arguably support that finding was too vague to establish the physical touching that is required to prove a sexual act or sexual contact:

> Q: When Mr. Cramer was there, did he use the fact that you wanted to do things that your mom wouldn't allow to have you do sexual things with him?
>
> A: Yes.

We reject this contention because it was not properly preserved before being raised for the first time on appeal. Before sentencing, the defense received the PSR, the government's offense conduct report, and T.B.'s grand jury testimony. Thus, the

defense knew that both T.B. and her mother initially reported that Cramer forced T.B. to perform "oral sex." In his written objections, Cramer denied that happened but did not challenge the recitals in paragraphs 8 and 9 that oral sex was reported to the Cass County Sheriff's Department. The defense had access to the "law enforcement records" referred to in the probation officer's Response to his objections which doubtless contained written report(s) of the Clark and T.B. interviews. Thus, the district court was entitled to treat the fact of oral sex reports as established. See Fed. R. Crim. P. 32(i)(3)(A); United States v. Lindsey, 827 F.3d 733, 738 (8th Cir.), cert. denied, 137 S. Ct. 413 (2016); United States v. Dokes, 872 F.3d 886, 889 (8th Cir. 2017) ("Unless a party objects with specificity and clarity to fact statements in the PSR, the district court may accept those facts as true.") (quotation omitted).

T.B. was present at sentencing, and the district court heard the prosecutor read her victim impact statement in which she stated: "I would like [Cramer] to go away for the maximum years possible, not to be allowed early release, and no contact at all with me or my family. He is manipulative and an awful person." Defense counsel knew from the record that the prosecutor's reference to "sexual things" in the grand jury testimony meant the oral sex Clark and T.B. had reported, and knew that if Cramer raised this issue to the district court, the district court would allow the government to call T.B. as a witness to clarify any ambiguity and might grant a continuance of the hearing so that Clark and/or the Sheriff's Department interviewer could be called to erase any doubt what Cramer had been accused of. And of course, even if this futile inquiry had resulted in eliminating the § 2G2.1(b)(2)(A) enhancement, defense counsel knew Cramer's advisory guidelines range would still be well above the statutory maximum ten year sentence that counsel expected the court to impose. In these circumstances, counsel's failure to raise the issue to the district court arguably waived the issue first raised on appeal. See United States v. Thompson, 289 F.3d 524, 526 (8th Cir. 2002) (Plain error review "only applies when a defendant inadvertently fails to raise an objection in the district court.").

Finally, T.B.'s grand jury testimony gave the district court a sound basis to construe the reference to "sexual things" as a less embarrassing way to convey to the grand jury the oral sex T.B. had reported to the Sheriff's Department. Immediately after T.B. confirmed that Cramer forced her to do sexual things "*with*" him, she was asked whether Cramer "*also*" helped her create sexually explicit pictures, juxtaposing sexually explicit pictures as separate from doing "sexual things with [Cramer]." Thus, whether Cramer's failure to raise this new contention to the district court is viewed as waiver, or a forfeiture requiring plain error review, the district court did not err in finding that the facts described in Paragraphs 8 and 9 "occurred" and in imposing the § 2G2.1(b)(2)(A) enhancement. See United States v. Trevino, 829 F.3d 668, 675 (8th Cir. 2016) ("[I]t cannot be error, plain or otherwise, for the district court to adopt facts in the PSR to which the defendant has not objected.").

**B.** Second, Paragraph 26 of the PSR recommended that Cramer be assessed a two-level increase under USSG § 2G2.1(b)(3) for knowingly engaging in the distribution of child pornography based upon facts alleged in Paragraphs 12, 16, 17, and 19. Cramer's written objections stated:

> Regarding paragraphs 12, 17, and 19, the defendant denies that he was trying to receive money for videos of T.B. on the Internet or that he was otherwise sharing images on the Internet.

Cramer therefore objected to the enhancement in Paragraph 26 being based on the distribution of T.B. images on the Internet but conceded "that the two-level enhancement for distribution probably applies and paragraphs 16, 17, and 18 probably support the enhancement." Cramer did not address this issue in his Sentencing Memorandum or at the sentencing hearing.

On appeal, Cramer argues for the first time that the district court clearly erred in finding that he shared depictions of T.B. on the Internet. Cramer admits that the

Skype messages on the laptop and the handwritten note T.B. found in his room are evidence that "someone" at the house was sharing depictions of T.B. And he acknowledges that T.B. in her grand jury testimony recalled that the note contained names, "lists of what they liked," abbreviations, and prices. However, Cramer argues, this evidence does not establish that *he* distributed images of T.B. Rather, it could have been T.B., who admitted sending sexually explicit images of herself to high school classmates.

Like his new objection to the oral sex finding, this contention was not properly preserved. Cramer conceded in his PSR objections that the two-level distribution enhancement "probably applies" and then did not raise the issue to the district court at sentencing. In any event, the contention is without merit because considerable evidence supports the district court's finding that the "someone" distributing images of T.B. on the Internet was Cramer. Clark entrusted Cramer with control over all electronic devices capable of communication. Law enforcement found Cramer in his locked room with several devices, including the laptop with the incriminating Skype messages, and T.B. later found the note listing names and prices in his room. Investigator Morrissey testified that Cramer used the four devices containing sexually explicit depictions of T.B. found in his room and had moved images between the devices. These facts provide ample evidence that Cramer knowingly distributed child pornography. The distribution enhancement was appropriately applied.

### III. Substantive Unreasonableness

Cramer next argues the district court imposed a substantively unreasonable sentence because it relied on erroneous sex act and distribution findings and improperly weighed the 18 U.S.C. § 3553(a) sentencing factors. We reject the first argument for the reasons explained in Part II. For the second, Cramer contends that the district court improperly weighed the § 3553(a) factors by ignoring his low criminal history score and his lack of prior sex offenses. We review an attack on the

substantive reasonableness of a sentence for abuse of discretion. <u>United States v. Feemster</u>, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

Cramer was charged with and pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The statutory maximum for that offense was ten years imprisonment. 18 U.S.C. § 2252(b)(2). But because the offense included the conduct described above, the PSR determined Cramer's advisory guidelines range to be 235 to 293 months imprisonment under USSG § 2G2.1, the guideline governing offenses involving sexual exploitation of a minor by *producing* sexually explicit materials or by a custodian who permits a minor to engage in sexually explicit conduct. <u>See</u> § 2G2.2(c). Had Cramer been charged with and convicted of an offense directly governed by § 2G2.1, his statutory maximum sentence would have been greater, probably twenty years. <u>See</u> 18 U.S.C. § 2252(b)(2); <u>cf.</u> § 2251(e). Thus, the district court's observation that Cramer committed an "exceedingly aggravated form" of the offense of conviction was clearly justified by the sentencing record, regardless of his low criminal history score and lack of prior sex offense convictions. The court explicitly identified the § 3553(a) factors it considered and gave each factor the weight it thought appropriate. There was no abuse of its substantial sentencing discretion.

## IV. The Special Conditions of Supervised Release

In his written objections to the PSR and at sentencing, Cramer objected to six of the thirteen "Special Conditions" of supervised release recommended in the PSR:

You must participate in a sex offender treatment program . . . .

You must not go to, or remain at, any place for the primary purpose of observing children under the age of 18, or any place where you know children under the age of 18 are likely to be, including parks, schools,

and playgrounds, without the prior approval of the U.S. Probation Officer.

You must not have any direct contact (personal, electronic, mail, or otherwise) with any child you know or reasonably should know to be under the age of 18 . . . without the prior approval of the U.S. Probation Officer. . . . Direct contact does not include incidental contact during ordinary daily activities in public places.

You must not view or possess any "visual depiction" (as defined in 18 U.S.C. § 2256) . . . of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256). You must not correspond with anyone in the business of providing such material, or enter adult entertainment venues where sexually explicit conduct is the primary product(s) for purchase or viewing.

You must not access the internet or possess and/or use computers, . . . internet capable devices, cellular telephones, and other electronic communications or data storage devices or media without the prior approval of the U.S. Probation Officer. . . .

You may not possess any type of camera (to include cameras within cellular telephones) or video recording device without the prior approval of the U.S. Probation Officer.

Cramer timely objected to those special conditions. At sentencing, he argued "the conditions as they are . . . proposed are pretty much boilerplate . . . . Eighth Circuit law is fairly clear that conditions are supposed to be particularized to a certain defendant." In response, government counsel explained in detail why each condition is "very, very relevant, and . . . very connected to the offense." The district court overruled the objections, explaining:

I find that these conditions are reasonably related to the offense of conviction as well as to the needs for treatment while on supervision. I think the addendum to the presentence report nicely addressed why the

-10-

Court believes that these conditions are reasonably related as did [counsel for the government].

I note that in so many of them that it says "without prior approval of the probation office," partly because we want to know that this behavior is occurring. And each of these, while they might seem to look like boilerplate . . . we have found over the years the kinds of things that we need to do in order to properly supervise people who have committed these kinds of crimes.

District courts are empowered to impose special conditions as part of a term of supervised release. USSG § 5D1.3(d-e); see 18 U.S.C. § 3583(c) and (d). Cramer committed a "sex offense" as defined in Application Note 1 to USSG § 5D1.2. Therefore, the advisory guidelines "recommend" special conditions requiring the defendant to participate in sex offender treatment and monitoring and "limiting the use of a computer . . . in cases in which the defendant used such items." § 5D1.3(d)(7)(A-B). We review the imposition of special conditions for abuse of discretion. United States v. Deatherage, 682 F.3d 755, 757 (8th Cir. 2012). Special conditions may be imposed "so long as the conditions are reasonably related to the sentencing factors enumerated in 18 U.S.C. § 3553(a), involve no greater deprivation of liberty than is reasonably necessary, and are consistent with the Sentencing Commission's pertinent policy statements." United States v. Wilkins, 909 F.3d 915, 918 (8th Cir. 2018) (quotation omitted); see 18 U.S.C. § 3583(d).

Each of the special conditions at issue has been upheld by this court in cases where they were reasonably related to the offense or the offender's history and characteristics. See, e.g., United States v. Muhlenbruch, 682 F.3d 1096, 1105 (8th Cir. 2012) (restrictions on pornographic materials); United States v. Koch, 625 F.3d 470, 481-82 (8th Cir. 2010) (requiring approval to possess or use computers, other devices, or cameras); United States v. Stults, 575 F.3d 834, 850-53 (8th Cir. 2009), cert. denied, 559. U.S. 915 (2010) (requiring approval to observe children in parks

-11-

and schools); <u>United States v. Mickelson</u>, 433 F.3d 1050, 1057 (8th Cir. 2006) (requiring prior approval before contact with minors). When a condition impacts basic liberty interests, such as limits on contacting minors or using computers and the Internet, we have encouraged the use of conditions requiring advance approval of the probation officer, like those under review, rather than outright prohibitions. <u>See Koch</u>, 625 F.3d at 481; <u>United States v. Wiedower</u>, 634 F.3d 490, 498 (8th Cir. 2011).

In this case, Cramer's offense conduct included repeated physical and mental sexual abuse of a vulnerable teenager in his custody, and exploitation of the minor in producing sexually explicit child pornography for his personal use and for distribution to others over the Internet. Cramer was allowed to plead guilty to what was, in substance, a lesser included possession offense, resulting in a statutory maximum ten year prison sentence plus eight years of supervised release under a series of special conditions intended to ensure both his rehabilitation and that the public was protected from the risk he would recidivate. In these circumstances, however common the wording of these conditions may have become, we are not dealing with "boilerplate" restrictions imposed without regard to Cramer's offense conduct and offender history and characteristics. We are dealing with a total sentence crafted to deprive Cramer of no more liberty than is reasonably necessary -- the maximum prison sentence for a less serious offense -- combined with eight years of supervised release including special conditions that will protect the public from a dangerous child sexual predator in the future. The district court did not abuse its substantial discretion in approving these special conditions.

## V. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____