# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 23-2993
_____

United States of America

*Plaintiff - Appellee*

v.

Muhammad Masood

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 25, 2024
Filed: April 3, 2025
_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

Muhammad Masood, a licensed physician from Pakistan, came to the United States in 2018 on a non-immigrant visa sponsored by the Mayo Clinic's Student Exchange Visitor Program to work as an unpaid medical researcher in Rochester, Minnesota. In 2019, after watching internet content from radicalized Islamic extremists, Masood was led to believe that the Islamic State of Iraq and al-Sham (ISIS) was "where the truth was." In March 2020, he was arrested at the Minneapolis

airport before boarding a flight to Los Angeles with plans to illegally travel by cargo ship to ISIS-controlled territory. In a search of Masood and his luggage, FBI agents found military and medical supplies, computers, and multiple digital storage devices. One storage device contained over 900 deleted images of Islamic extremist propaganda, including multiple depictions of violence committed by ISIS and graphics illustrating death tolls from Islamic extremist attacks. Masood was charged and pleaded guilty to attempting to provide material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B.

The Presentence Investigation Report (PSR) calculated an advisory guidelines sentencing range of 292 to 365 months imprisonment, capped at the statutory maximum of 240 months. The district court[1] adopted the PSR as modified by the statutory maximum sentence, varied downward, and sentenced Masood to 216 months imprisonment. Masood appeals the sentence, arguing the court (1) procedurally erred by applying the terrorism enhancement in USSG § 3A1.4; (2) procedurally erred in considering the 18 U.S.C. § 3553(a) sentencing factors; and (3) violated his due process rights and his right to allocution by deciding disputed sentencing issues prior to the sentencing hearing. We affirm.

## I. Background

There was no testimony at Masood's sentencing hearing. The PSR detailed extensive Offense Conduct facts in 21 lengthy paragraphs, focusing in particular on Masood's contacts in early 2020 with two FBI "confidential human sources," identified as CHS-1 and CHS-2. Though Masood objected to the recommended terrorist enhancement and complained that the PSR presented "just the most inflammatory quotes from the extensive messaging," he did not object to these factual

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

paragraphs, and the district court adopted the PSR at sentencing. Therefore, we treat those facts as established. See Fed. R. Crim. P. 32(i)(3)(A); United States v. Cramer, 962 F.3d 375, 380 (8th Cir. 2020). The following summary is based on Offense Conduct and Personal and Family Data fact recitations in the PSR.

After completing medical school in Pakistan, Masood traveled to the United States in 2018 on a non-immigrant visa sponsored by the Mayo Clinic to work as an unpaid medical researcher. While working in that position, he took the foreign medical graduate licensing exam, which he failed. Soon after, Masood married a U.S. citizen, but they divorced less than a year later. In 2019, isolated and depressed, Masood began watching videos and internet content from radicalized Islamic extremists, including Anwar Al-Awlaki, which led him to believe that ISIS was "where the truth was." Online content about conditions in Syria prompted Masood to use his medical training to help. But by the time he contacted CHS-1, his intent had shifted from intending to aid to intending to fight.

In January 2020, CHS-1 informed the FBI that a user of an encrypted social media platform, soon identified as Masood, was planning to provide material support to ISIS. Masood contacted CHS-1 on the encrypted platform on January 24 and requested help traveling to an ISIS-controlled region. In communicating with CHS-1 for nearly a month, Masood made numerous comments reflecting an intent to fight for ISIS -- he "wanted to fight on the front line as well as help the wounded brothers;" he "belong[ed] on the frontline and not anywhere else;" he wanted "to help mujahideen (individuals fighting on behalf of Islam against non-believers) on the ground." He also said that he sometimes wanted to attack while "behind enemy lines" in the United States because many others cannot "reach here to attack." He wondered whether traveling to ISIS-controlled territory to fight would cause him to "miss the opportunity of attacking the enemy . . . in the middle of things." But he wanted to make hijra (migrate) to Syria because he "hates smiling at the passing kuffar" (non-believers) in the United States and "cannot tolerate it anymore."

-3-

Masood sought CHS-1's assistance in getting a visa to Jordan and sent a photo of his Pakistani passport. After he traveled to Syria, Masood noted, he would need weapons training and said he could learn engineering to modify drones for use in bombings. He suggested a "team of trusted brothers" to modify drones to be "almost like flying grenades," and he developed "creative" concepts for lethal use of drones as weapons. On February 1, when CHS-1 sent a message that Masood might have to kill people, he responded, "i want to kill and get killed . . . and kill and get killed." On February 13, Masood told CHS-1, "I should be on the ground helping brothers sisters kids." They discussed arranging a video conference with a purported ISIS commander. On February 19, Masood traveled to a hotel in suburban Minneapolis where he and CHS-1 held a secretly recorded video conference with CHS-2, whom Masood believed to be an ISIS commander located in a foreign country. Masood explained to CHS-2 how he had learned the truth from Anwar-al-Awlaki (an al-Qaeda leader later killed by the U.S. military) and confirmed that he wanted to go to Syria "to be a combat medic . . . and also fight." Offered the opportunity, Masood pledged in Arabic a bayat (solemn promise of allegiance) to ISIS and its emir.

In March 2020, after an earlier trip to Jordan was cancelled by COVID-19 restrictions, Masood and CHS-1 developed a new plan of travel to ISIS-controlled territory. Masood purchased a flight to Los Angeles. He was arrested at the Minneapolis airport after proceeding through the security checkpoint, and a search of his luggage found incriminating military equipment and a digital storage device containing deleted images of Islamic extremist propaganda, depictions of violence committed by ISIS, and graphics reporting deaths of citizens of various nations resulting from Islamic extremist attacks. This indictment followed.

## II. Procedural History

Masood was placed on suicide watch during his first week in jail. He became non-responsive or incoherent in conversations with his counsel. The district court

granted his motion for a competency evaluation. Diagnosed with psychotic and depressive disorders, the evaluating doctor opined that he was not competent to proceed. The court determined that Masood was incompetent to stand trial and committed him for treatment to restore competency. In December 2021, the Bureau of Prisons reported that Masood was competent to stand trial. In June 2022, the court without objection found Masood competent to proceed to trial. Masood pleaded guilty in August 2022 to the charged offense without a plea agreement.

The PSR recommended a total offense level of 35, determining that the base offense level of 26 should be adjusted twelve-levels upward under § 3A1.4(a) for a terrorism enhancement as defined under 18 U.S.C. § 2332b(g)(5) and reduced by three levels for acceptance of responsibility. It recommended that Masood's criminal history category should be increased from I to VI because his offense involved a federal terrorism charge under USSG § 3A1.4(b). The PSR recommended the statutory maximum sentence of 240 months imprisonment.

Pertinent to his appeal, Masood objected to the twelve-level terrorism enhancement, arguing that his offense did not meet the specific intent that § 2332b(g)(5) requires for a federal crime of terrorism under § 3A1.4 because his primary purpose underlying his conduct was to provide medical aide. He also sought downward departures and variances based on factors including his history, aberrant behavior, rehabilitation, and unlikely recidivism.

At sentencing, the district court began by commenting on the guidelines range. It announced that it would hear argument from the parties on the guidelines and variance issues and stated that it would provide the parties with a written Order at recess that contained its findings on these issues. This Order was distributed to give the parties an "opportunity to peruse through" its findings for "familiarity" before returning for further argument, allocution, and final sentencing. It did not state what sentence would be imposed. During the hearing, the court heard from both counsel

on the issues, invited statements from Masood's family, and provided Masood an opportunity for allocution. The court then imposed a sentence of 216 months imprisonment, varying downward from the 240-month maximum for time served and Masood's efforts to "assist" himself. This appeal followed.

### III. Sentencing Issues

Masood argues the district court procedurally erred at sentencing. Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, . . . failing to consider the § 3553(a) factors, . . . or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotation omitted). Masood argues the district court made each of these errors in determining his sentence.

**A. The Terrorism Enhancement.** Masood first contends that the court procedurally erred by improperly applying the terrorism enhancement in USSG § 3A1.4, a Victim-Related Adjustment to his base offense level that increased his total offense level and criminal history category. We review the court's "factual findings for clear error and the construction and application of the advisory sentencing guidelines *de novo*." United States v. Ali, 799 F.3d 1008, 1029 (8th Cir. 2015). "[S]entencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." United States v. Scott, 448 F.3d 1040, 1043 (8th Cir. 2006).

Masood's offense of conviction, 18 U.S.C. § 2339B(a)(1), is violated by a person who "knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so . . . . To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined . . .), that the organization has engaged or engages in terrorist

activity (as defined . . .), or that the organization has engaged or engages in terrorism (as defined . . .)." At least three other circuits have ruled that this "knowingly" *mens rea* element requires the government to prove the defendant's specific intent to violate the law. See United States v. Mohamed, 757 F.3d 757, 759 (8th Cir. 2014), and cases cited.[2]

Section 3A1.4 of the Guidelines, entitled Terrorism, provides:

(a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by **12** levels; but if the resulting offense level is less than level **32**, increase to level **32**.

(b) In each such case, the defendant's criminal history category from Chapter Four . . . shall be Category VI.

Application Note 1 provides that "*'federal crime of terrorism'* has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." USSG § 3A1.4, comment. (n.1).

Section 2332b(g)(5) provides that "'Federal crime of terrorism' means an offense that (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of" enumerated federal offenses. (cleaned up). Masood acknowledges that his conviction for violating § 2339B satisfies the second requirement. The issue is whether the district court erred in finding that *his* violation of § 2339B was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."

---

[2]The Supreme Court quoted a well-accepted articulation of this element in Liparota v. United States -- "that the defendant knowingly did an act which the law forbids, purposely intending to violate the law." 471 U.S. 419, 422 & n.3 (1985).

Masood argues there is insufficient evidence in the sentencing record that his offense is a "federal crime of terrorism" within the purview of § 3A1.4(a) because the government presented no evidence that he acted with the specific intent to violate § 2339B(a)(1), that is, evidence of conduct "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," as the first prong of § 2332b(g)(5) requires. Therefore, it was procedural error to impose the 12-level sentencing enhancement and increase his criminal history category. Masood argues the record establishes that his only motivations were to provide medical aid and act according to his "religious fanaticism." We disagree.

In applying § 2332b(g)(5)(A)'s requirement, we have twice held that "motive is simply not relevant . . . . 'Motive' is concerned with the rationale for an actor's particular conduct." Mohamed, 757 F.3d at 760 (quotation omitted). "Calculation is concerned with the object that the actor seeks to achieve through planning or contrivance." Ali, 799 F.3d at 1031 (8th Cir. 2015), quoting Mohamed, 757 F.3d at 760; see also United States v. Awan, 607 F.3d 306, 317 (2d Cir. 2010). "[T]his standard does not focus on the defendant but on his 'offense,' asking whether it was calculated, i.e., planned -- for whatever reason or motive -- to achieve the stated object." Ali, 799 F.3d at 1031 (quotation omitted).

The district court noted that the § 3A1.4 enhancement applies if Masood's offense was "'intended to promote' terrorism," not only if it was "calculated to influence or affect the conduct of government by intimidation or coercion":

> Thus, "so long as the defendant's offense was intended to encourage, further, or bring about a federal crime of terrorism as statutorily defined, the defendant himself does not have to commit an offense listed in § 2332b(g)(5)(B), and the defendant's offense need not itself be 'calculated' as described in § 2332b(g)(5)(A)." Awan, 607 F.3d at 314.

(cleaned up). The court then concluded the evidence establishes that Masood's offense met either of the two § 3A1.4(a) alternatives:

> [Masood] testified under oath at the plea hearing that he knew he was attempting to join ISIS, and that he knew that ISIS was a terrorist organization. Masood also discussed with the purported ISIS recruiter activities like developing drones for attack purposes. He talked with that individual about committing "lone wolf" attacks in the United States, and he offered to "kill and get killed." He packed a tactical vest, ammunition pouches, black camouflage military fatigues, and similar items, in addition to items that would allow him to provide medical treatment. All of these facts evidence his desire to either fight with ISIS or provide support for ISIS's terrorist activities, not merely provide medical care.

> Moreover, even if § 3A1.4 only applies to conduct that is "calculated to influence or affect the conduct of government by intimidation or coercion" under § 2332b(g)(5)(A), the evidence listed above also suffices to establish by a preponderance of the evidence that Masood's conduct was so calculated. The provisions of § 3A1.4 apply.

The issue on appeal is whether the district court committed procedural error by improperly calculating the Guidelines range by imposing the § 3A1.4 enhancement based on factual findings made by a preponderance of the evidence. We conclude the court did not err, much less clearly err, in finding by a preponderance of the evidence that Masood's offense involved and was intended to promote a federal crime of terrorism and applying the § 3A1.4 enhancement. In Mohamed, we affirmed application of a § 3A1.4 enhancement for a defendant who assisted men traveling to Somalia to fight government forces, despite a lack of evidence of a personal motivation to retaliate, influence, or affect government conduct. His actions to support the terrorist organization were sufficient. This "is not a rejection of the specific intent requirement." 757 F.3d at 760. When the defendant pleads guilty to offenses that "involved or were intended to promote crimes of terrorism . . . the

-9-

requisite specific intent" exists under § 2332b(g)(5). Id. (cleaned up); see United States v. Wright, 747 F.3d 399, 419 (6th Cir.) ("The court can find [specific] intent based on circumstantial evidence and reasonable inferences from the facts presented."), cert. denied, 574 U.S. 866 (2014); accord United States v. Arcila Ramirez, 16 F.4th 844, 854 (11th Cir. 2021), cert. denied, 145 S. Ct. 204 (2024).

Likewise, in Ali, we noted "it is clear that the § 3A1.4 terrorism enhancement may be imposed on a defendant who has been convicted of providing material support to a designated foreign terrorist organization." 799 F.3d at 1030 (cleaned up). Like the defendants in Mohamed and Ali, Masood "planned his offense -- whatever his reasons or motivations -- with the purpose of influencing or affecting government conduct." Mohamed, 757 F.3d at 760. Moreover, his violent communications reflected an intent to support ISIS terrorist activities against governments opposed to ISIS, including attacks within the United States ("behind enemy lines," where other ISIS supporters "struggle to reach here to attack").

"Under clear error review, we reverse only when the entire record definitely and firmly illustrates that the lower court made a mistake." United States v. Bradley, 127 F.4th 1127, 1132 (8th Cir. 2025) (cleaned up). The district court did not err in applying the § 3A1.4 terrorism enhancement.

**B. Failure to Consider and Explain Issues.** Masood argues the district court procedurally erred by failing to properly consider the § 3553(a) sentencing factors when it "ignored or summarily dismissed substantial mitigating evidence" -- his history of severe mental illness that made him susceptible to extremist influences, forensic evidence that those convicted of terrorism-related offenses have low rates of recidivism, evidence that defendants in more egregious terrorism cases "routinely" received sentences of ten years or less, evidence of family support and post-offense rehabilitation, and an order of removal upon completion of his sentence.

Before the sentencing hearing, the district court received the PSR and sentencing memoranda from the parties that comprehensively evaluated his offense conduct, summarized his criminal and extensive personal history, and reviewed § 3553(a) factors that could warrant a departure or variance. These materials reported that Masood, a licensed physician from Pakistan, struggled personally and professionally before and after moving to the United States. During his youth and medical schooling in Pakistan, Masood's parents exerted extreme control over his life and inhibited his social interactions, resulting in bullying and difficulty with social interactions. After hospitalization for a nervous breakdown in 2011, he experienced paranoid delusions and was diagnosed with Bipolar Affective Disorder with Psychotic Features. Masood completed his medical degree. His father persuaded him to leave Pakistan and take a position at the Mayo Clinic near his cousin in Rochester in 2018 where he married a U.S. citizen. The marriage unraveled, in part because of Masood's traditionalist religious views. His mental health concerns continued, aggravated by personal and professional setbacks.

At sentencing, the court noted its review of the PSR and sentencing memoranda. During a recess, the court provided the parties with a sentencing Order that stated it had "considered all of [the] factors in imposing Masood's sentence" and responded in detail to his contentions about mental health, aberrant behavior, and others issues. "Thus, the district court was aware of [Masood's] arguments, and we therefore presume that the district court considered and rejected them." United States v. Wilcox, 666 F.3d 1154, 1157 (8th Cir. 2012) (quotation omitted).

Masood argues that the district court did not provide "any meaningful consideration to substantial evidence of strong mitigating factors." The court's consideration of the § 3553(a) factors was sufficient. We "presume that district judges know the law and understand their obligation to consider all the § 3553(a) factors." United States v. Gray, 533 F.3d 942, 943 (8th Cir. 2008) (cleaned up). "[W]e do not require a district court to provide a mechanical recitation of the factors

it weighed; it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." United States v. Maluoth, 121 F.4th 1158, 1163-64 (8th Cir. 2024) (quotations omitted); see United States v. Villareal-Amarillas, 562 F.3d 892, 898-99 (8th Cir. 2009).

It is clear from the record that the court sufficiently considered Masood's arguments for a sentencing variance, determined that other factors outweighed many of those considerations, and still applied a downward variance. At sentencing, Masood extensively argued that the court should apply a greater variance because of his mental health and its improvement, because his actions were an aberration, because data indicates a low likelihood of recidivism, and because other defendants sentenced for allegedly analogous crimes received significantly lower sentences. The court also heard from two members of Masood's family, who spoke to his personal history and circumstances. The district court did not "woefully fail[] to meet its obligation to meaningfully consider the parties' arguments and evidence presented," as Masood suggests. The court simply found these circumstances insufficient to warrant a sentence lower than the downward variance it applied.

The district court has "wide latitude to weigh the 18 U.S.C. § 3553(a) sentencing factors and to assign some factors greater weight than others." United States v. Haskins, 101 F.4th 997, 1000 (8th Cir. 2024) (quotations omitted). "[D]isagreement with how the district court weighed the relevant sentencing factors does not justify reversal." United States v. Jones, 71 F.4th 1083, 1087 (8th Cir. 2023). "[S]imply because the district court weighed relevant factors . . . more heavily than [Masood] would prefer does not mean the district court abused its discretion." United States v. Sisk, 999 F.3d 631, 636 (8th Cir. 2021) (quotation omitted). His "disagreement with how the district court weighed the [§ 3553(a)] factors does not demonstrate abuse of discretion." United States v. McSmith, 968 F.3d 731, 737 (8th Cir. 2020).

"[N]ot every reasonable argument advanced by a defendant requires a specific rejoinder by the judge." United States v. Palkowitsch, 36 F.4th 796, 801 (8th Cir. 2022) (cleaned up). "Sometimes a judicial opinion responds to every argument; sometimes it does not." Rita v. United States, 551 U.S. 338, 356 (2007). There was no procedural error in the district court's consideration of the § 3553(a) sentencing factors.

Masood further argues the district court procedurally erred by failing to adequately explain the reasons for the sentence being imposed. Masood did not object at sentencing to the district court's explanation. "If counsel does not timely object that the reasons for imposing a sentence have not been adequately explained, defendant has voluntarily relinquished the issue by depriving the appellate court of the district court's response to a timely objection." United States v. Dailey, 113 F.4th 850, 855 (8th Cir. 2024) (cleaned up). Therefore, our review is for plain error. See United States v. Krzyzaniak, 702 F.3d 1082, 1085 (8th Cir. 2013).

A district court's explanation must "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision-making authority." Rita, 551 U.S. at 356. "The court's explanation is sufficient if the sentencing record taken as a whole demonstrates that the court considered the relevant factors." Krzyzaniak, 702 F.3d at 1085.

After considering Masood's arguments, both in his sentencing memorandum and at the hearing, the district court explained:

> [N]otwithstanding mental illness, notwithstanding childhood difficulties, notwithstanding all of that stuff that we have heard, you are sitting in this Court as a convicted terrorist, and that's the way it is. . . . [T]his Court must give consideration to deterrence at large. That it gives notice to anyone who has the concept of entering into terrorism to be deterred

from doing so because of the penalty they will receive. And I'm haunted in your case by the repeated statements that I will kill or be killed. That's almost beyond comprehension, and I'm so very, very sorry to have read it and heard it. Now, I have indicated that I would give a variance in this matter. . . . [W]hen we talk about people being incarcerated, we always often talk about doing hard time. Well, sir, you've had three and a half years of pure hard time. . . . [Y]ou were in a county jail through the time of this pandemic that we've had in this country, and I know the circumstances at Elk River were not good circumstances during that period of time. And I commend you . . . for what you have done during that time to assist yourself, and the combination of these factors leads the Court to give a variance in your case. It's not a very big one, but it is a variance.

Viewing the sentencing record taken as a whole, this explanation is sufficient to demonstrate that the court considered the relevant sentencing factors. There was no procedural or substantive error.

## IV. The Due Process Issue

At the start of the sentencing hearing, the district court noted that counsel no doubt would argue guidelines and variance issues. "Preliminarily," the court advised, "pursuant to the [PSR], I would find that the total offense level is 35; the criminal History Score is VI; and . . . the imprisonment range is 292 to 365 months [but] the statutory maximum applicable to this case is 240 months." After counsel then argued the terrorism enhancement issue for eleven transcript pages, the court called a brief recess, explaining:

I want to review a matter, and then I will anticipate that I will give you a written order with respect to the court's rulings on the proceedings of this morning, and that I'll give you an opportunity to persuse through that so that you will have some familiarity with it, at which time we'll return to the court room and hear allocution . . . and sentencing.

-14-

Ten minutes later, after the court circulated a written order, the session resumed and the court stated: "you can see that I have denied the defense positions with respect to this. I will stand with the findings that were originally read today." Defense counsel did not object to this procedure except to say it wished to present two additional cases that concluded the Criminal History Category VI imposed with the enhancement was overstated. The court responded, "Okay. Well, cite them now."

On appeal, Masood argues the district court violated Federal Rule of Criminal Procedure 32(i) and the Due Process Clause of the Fifth Amendment by deciding all the disputed sentencing guidelines issues prior to the sentencing hearing. "The sentencing hearing was meaningless because the district court had already made up its mind." This argument is without merit. Masood failed to object at sentencing, so we review for plain error. United States v. Hoffman, 707 F.3d 929, 937 (8th Cir. 2013). No error exists much less plain error.

Rule 32(i)(1)(C) provides that at sentencing, the district court "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Here, Masood's attorney was allowed to comment and did comment in a lengthy sentencing memorandum and extensive argument opposing the recommended terrorism enhancement at sentencing.

Rule 32(i)(4)(A) provides that, "[b]efore imposing sentence, the court must: (i) provide the defendant's attorney an opportunity to speak on the defendant's behalf; [and] (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Failure to provide this right to allocution is reversible error and mandates a remand for resentencing. United States v. Walker, 896 F.2d 295, 301 (8th Cir.1990). However, there is no plain error if the court announces its intent to impose a sentence and then grants the defendant his right of allocution before imposing that sentence. United States v. Hentges, 817 F.3d 1067, 1069-70 (8th Cir. 2016); see United States v. Puckett, 715 F. App'x 578, 579 (8th Cir.

2018) (finding no violation when court stated intention to vary upwardly before allocution). "Courts are not nearly as strict when a defendant allocutes at some point during sentencing if that allocution retains the potential to affect the sentence." United States v. Hernandez-Espinoza, 890 F.3d 743, 747 (8th Cir. 2018).

Here, the district court announced preliminary findings about guidelines range issues and then allowed Masood's counsel to be heard on those issues. This procedure did not establish the court "had already made up its mind." It helped counsel focus their arguments on disputed issues to know the court's preliminary reaction to the PSR and their sentencing memoranda. After arguments and a brief recess, the court then distributed a written Order adopting its preliminary findings. This was not a pre-allocution sentencing ruling; it did not even indicate what term of imprisonment the court would oppose prior to allocution, only that the court would vary downward, albeit to a lesser extent than Masood wanted. Defense counsel asked, "are the variances still on the table?" The court said, "Yes." The defense then called two supporting witnesses, and counsel vigorously argued for an "extremely substantial downward variance." The district court then invited Masood to make "comments . . . before penalty is imposed." Masood responded with a lengthy allocution, after which the court made its final sentencing determination. There was no plain error violation of Rule 32(i) or the Due Process Clause.

For the foregoing reasons, the judgment of the district court is affirmed.

_____