# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1225
_____

United States of America

*Plaintiff - Appellee*

v.

Justin Lyle Cutbank

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 10, 2025
Filed: October 7, 2025
_____

Before LOKEN, BENTON, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.

A jury convicted Justin Cutbank, a felon with an extensive criminal history, of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He was sentenced under the Armed Career Criminal Act to 292 months imprisonment, within the advisory guidelines range as determined by the district

court.[1] He appeals his conviction and sentence, arguing the district court committed multiple evidentiary and procedural errors that deprived him of a fair trial and improperly applied a USSG § 2K2.1(b)(6)(B) sentencing enhancement that increased the advisory guidelines range. We affirm.

## I. Background

During the night of November 19-20, 2020, after drinking and using methamphetamine, Cutbank awakened his girlfriend, D.F., pointed a gun at her face, and directed her into a closet, making paranoid accusations about "listening devices" in the home and people outside waiting to harm him. He kept D.F. in the closet at gunpoint for what D.F. testified felt like hours, threatening her life and striking her across the face with the gun. At some point, Cutbank ordered D.F. to rouse others sleeping in the house, including her two teenage sons and her housemate, C.F. Eventually, Cutbank fled with D.F.'s cell phone and the gun. D.F. called the police.

The police also received a call from a house a half mile from D.F.'s residence reporting that a man was in the garage and refused to leave. When police arrived, Cutbank barricaded himself in the garage and, over the course of several hours, made erratic statements and claimed to have a weapon. Cutbank resisted when officers attempted to detain him, biting an officer in the face and neck and grabbing his gun. Officers searching the path Cutbank likely would have taken between D.F.'s home and the garage found D.F.'s cell phone, a butcher-style knife, and a Marlin .22 caliber rifle with a sawed-off barrel and stock. DNA on the gun matched Cutbank. At trial, D.F. and C.F. identified the weapon as one they saw Cutbank with before that night. The jury convicted Cutbank of the charged felon in possession offense and of being previously convicted of at least three violent felonies, triggering the enhanced penalty

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

provisions of § 924(e). He now appeals his conviction and sentence, arguing that the district court abused its discretion in multiple rulings it made before and during trial and misapplied USSG § 2K2.1(b)(6)(B) to enhance his sentence.

## II. The Evidentiary and Procedural Issues.

Cutbank raises a series of evidentiary and procedural issues, providing no cases and almost no analysis to support his arguments. None of the contentions has merit.

**A.** Before trial, Cutbank filed a motion to prevent D.F. and C.F. from testifying that they had previously observed him with the sawed-off Marlin .22 caliber rifle, arguing this would be propensity evidence violating Rule 404(b) of the Federal Rules of Evidence. The district court agreed with the government that this would be intrinsic evidence relevant to proving the possession charge and demonstrating continuous possession of the firearm before the incident. We agree. "Prior possession of a firearm is directly relevant to proving later possession of that same weapon because it helps establish ownership or control of the weapon." United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014), cert. denied, 575 U.S. 978 (2015). At trial, D.F. testified she had seen Cutbank with the sawed-off rifle a "handful of times" before the incident at issue.

**B.** Before trial, Cutbank also requested that the jury be instructed, to avoid hearsay and Confrontation Clause issues, that it could not consider D.F.'s statements to police as substantive evidence of Cutbank's actions until D.F. herself testified to the events. The government argued the statements would establish the context for police officer actions and their knowledge at the time, that the officers' testimony would not overstep hearsay rules, and that a later instruction from the bench, if needed, would be customary and sufficient. "We review a district court's decision not to give a limiting instruction for abuse of discretion." United States v. Bennett, 765 F.3d 887, 899 (8th Cir. 2014), cert. denied, 574 U.S. 1180 (2015). The court

"need not instruct the jury regarding each item of evidence at the time the evidence is admitted if the court provides an appropriate instruction at the close of trial." Id. Here, the record demonstrates the court did not admit hearsay during the trial. In addition, D.F. testified. The Confrontation Clause is satisfied "when the hearsay declarants . . . actually appear in court and testify in person." United States v. Charboneau, 613 F.3d 860, 861 (8th Cir. 2010) (quotation omitted). There was no abuse of discretion.

**C.** At trial, D.F. testified she had seen Cutbank with the sawed-off rifle a "handful of times" before the incident. The district court denied Cutback's renewed objection to this testimony. The court also overruled a defense objection when C.F., testifying as a government witness, testified that she had seen the gun used during the incident "once or twice" before. On appeal, Cutback cites no authority refuting the court's pretrial ruling that this was intrinsic evidence relevant to proving the possession charge and demonstrating continuous possession of the firearm before the incident. See, e.g., Battle, 774 F.3d 504, 511.

**D.** During cross examination regarding prior inconsistent statements regarding the gun, including that she did not remember seeing the gun on the night in question, D.F. testified that some statements were because she was "not familiar with guns" and "did not like guns . . . [a]s [her] sister was killed by a gun." The court denied Cutback's motion to strike testimony that D.F.'s sister was killed by a gun. This testimony responded to cross-examination regarding inconsistent prior statements. Cutback points to no unfair prejudice or confusion resulting from this testimony, and none is apparent. See Fed. R. Evidence 403. C.F., testifying as a government witness, also mentioned D.F.'s sister being killed by a gun without a defense objection. There was no abuse of the district court's broad evidentiary discretion. See, e.g., Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008).

**E.** The defense sought to undermine C.F.'s testimony that she had seen the gun used during the incident "once or twice" before by cross-examining her about prior statements she made to a police investigator. The district court allowed questions regarding what C.F. said to police but sustained the government's objections to defense counsel reading portions of the resulting police report into the record without proper foundation because the report was not authored by C.F. Although Cutback on appeal did not refer to this ruling, the government's brief argued that Cutback's "next claim is that the district court 'thwarted' his efforts to cross-examine C.F. on her testimony regarding the gun possession." We do not appreciate appellees who unnecessarily expand the issues on appeal. In any event, whether preserved or not, the "claim" is without merit. "Although extrinsic evidence may be used for impeachment by prior inconsistent statement, such extrinsic evidence must still be authenticated." United States v. Cumbie, 28 F.4th 907, 914 (8th Cir. 2022) (quotation omitted). The court did not abuse its discretion by requiring proper authentication.

Finally, as Cutback acknowledges, "this court will not reverse an erroneous evidentiary ruling if the error was harmless. . . . In other words, we will reverse only if the jury may have been substantially swayed by the improperly admitted evidence." United States v. DeMarce, 564 F.3d 989, 997 (8th Cir. 2009) (quotation omitted). Cutbank cannot clear this hurdle. The government's evidence, both testimonial and physical, was substantial. Thus, the district court's evidentiary rulings "did not influence or had only a slight influence on the verdict." Id. at 998. "We will not overturn a conviction based on the cumulative effect of trial errors unless there is substantial prejudice to the defendant." United States v. Keys, 918 F.3d 982, 985 (8th Cir. 2019) (quotation omitted).

### III. The Sentencing Issue.

The jury found Cutbank guilty of being a felon in possession of a firearm. It also found he had three or more prior violent felony convictions, triggering the

Armed Career Criminal Act's enhanced penalties. The Presentence Investigation Report (PSR) recommended a base offense level of 26 because the offense involved a sawed-off firearm described in 26 U.S.C. § 5845(a) and Cutback had at least two prior convictions for crimes of violence, plus a three-level increase because the firearm had an altered/obliterated serial number, a two-level increase because he recklessly created a risk of death or serious bodily injury while fleeing from police, and a four-level increase because he possessed the firearm in connection with another felony offense, for a total offense level of 35.[2] The PSR calculated a Criminal History Category of VI, resulting in an advisory guidelines sentencing range of 292 to 365 months imprisonment. On appeal, Cutbank argues the district court incorrectly applied the four-level sentencing enhancement for possession of a firearm in connection with another felony offense under § 2K2.1(b)(6)(B).

This enhancement applies if a defendant used or possessed any firearm or ammunition in connection with another federal, state, or local felony offense "regardless of whether a criminal charge was brought, or a conviction obtained." § 2K2.1, comment. (n.14(C)). At sentencing, the district court adopted, without objection, the PSR's factual statements regarding Cutback's prior felony convictions. Thus, the court did not err, much less clearly err, in finding that the facts in the PSR establish that the gun was used in connection with another felony. See United States v. Dunn, 723 F.3d 919, 929-30 (8th Cir. 2013) (standard of review), cert. denied, 571 U.S. 1145 (2014). Rather, Cutbank argues that application of the § 2K2.1(b)(6)(B) 4-level enhancement results in a within-range sentence that "conflicts with the core principle of 18 U.S.C. § 3553(a)" that a sentence "be sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

---

[2]Though the jury found that Cutback had three or more prior violent felony convictions, triggering Armed Career Criminal Act penalties, the Armed Career Criminal Guideline would have produced a total offense level of 34. The Guidelines provide that the greater offense level applies. See USSG § 4B1.4(b).

In determining an appropriate sentence, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49 (2007). "Before a court of appeals can consider the substantive reasonableness of a sentence, it must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." Rosales-Mireles v. United States, 585 U.S. 129, 143-44 (2018). The court then considers whether the § 3553(a) factors warrant a departure or variance from the advisory guidelines range sentence.

Here, the court imposed a sentence within the applicable guidelines range, which we presume is reasonable on appeal. United States v. Goodhouse, 81 F.4th 786, 793 (8th Cir. 2023). At sentencing, the court noted its review of the PSR and sentencing memoranda and reviewed § 3553(a) factors that could warrant a variance. "Thus, the district court was aware of [Cutbank's] arguments, and we therefore presume that the district court considered and rejected them." United States v. Masood, 133 F.4th 799, 809 (8th Cir. 2025) (quotation omitted). "To uphold the sentence, we do not require a district court to provide a mechanical recitation of the factors it weighed; it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." United States v. Maluoth, 121 F.4th 1158, 1164 (8th Cir. 2024) (quotation omitted). Cutback had nearly a dozen prior felony convictions, many involving violence and firearms. The offense of conviction involved domestic abuse, kidnaping, assault in the victim's home in the presence of her children, and injuring a police officer while resisting arrest. The district court did not abuse its substantial sentencing discretion and impose a substantively unreasonable sentence when it sentenced Cutback to a within-range 292-month term of imprisonment.

The judgment of the district court is affirmed.

_____